# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

**DEBBIE ANN CROSSLEY**                                                              **PLAINTIFF**

**V.**                             **CIVIL ACTION NO. 3:11CV556 HTW-LRA**

**MICHAEL J. ASTRUE**
**COMMISSIONER OF SOCIAL SECURITY**                      **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Debbie Ann Crossley appeals the final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

### Factual and Procedural Background

On August 19, 2008, Crossley, represented by counsel, protectively filed applications for a period of disability, DIB, and SSI, alleging that she became disabled on August 7, 2008. The applications were denied initially and on reconsideration. She appealed the denial and on April 20, 2010, Administrative Law Judge Nancy L. Brock ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review on July 7, 2011. She now appeals that decision.

Crossley has a 12th grade education and was approximately 51 years old at her administrative hearing. She has past relevant work experience as a cook, dietary aide, and housekeeper. In her application for benefits, she alleges disability due to foot pain and an arch deformity (flat feet), which affect her ability to walk and stand. She also alleges pain in her hip, lower back, neck, arm, and shoulder, and asserts that she is losing strength in her right hand. Her height is noted to be 5'0 and her weight is 220 lbs. She has allegedly suffered from depression since 1994, and has difficulty sleeping because of night sweats.

After reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[1] the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, August 7, 2008. At steps two and three, the ALJ found that although Plaintiff's obesity, asthma, degenerative disc disease of the cervical spine, foot pain, and depression were severe, none of her impairments, alone or in combination, met or medically equaled any listing. At step four, the ALJ found that Plaintiff could not return to her past relevant work as a cook or housekeeper/cleaner, but has the residual functional capacity to

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

perform light work except that she would need to work in a clean environment with no fumes, perform simple two-step jobs, and communicate with supervisors and co-workers on a basic level. The ALJ concluded at step five, that given Plaintiff's age, education, work experience, and residual functional capacity, she could work as a fast-food worker, retail clerk, and a poultry worker.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff alleges that the ALJ's residual functional capacity assessment is not supported by substantial evidence, and that the ALJ erred as a matter of law in failing to

3

make a proper credibility finding. The Court rejects these arguments for the reasons that follow.

> **1.     Whether substantial evidence supports the ALJ's residual functional capacity assessment**.

Crossley asserts that the ALJ's residual functional capacity assessment that she can perform the standing and walking requirements for light work is not supported by substantial evidence.[2] She relies heavily on the handwritten notes of a one-time examining physician, Dr. Hensarling, who treated her in July 2008, approximately four weeks prior to her alleged onset date. Because Dr. Hensarling's findings would preclude her from standing the six hours per day required for light work, says Plaintiff, the ALJ's failure to assign controlling weight to his opinion or to order a consultative examination was reversible error.

Dr. Hensarling's report shows that Plaintiff complained of pain in her hip, lower back pain, shoulder, and neck; she also advised that she stands all day and it was "hard to walk when off work." His objective findings indicate a painful arc and impingement in the shoulders, severe rotation to mid-foot with plantar tibialis failure, severe hind-foot

---

[2] Social Security regulations provide that "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.... [Light work] requires a good deal of walking or standing, or ... sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b) (2013).

4

valgus, and a surgical scar from a partial calcanectomy of the left foot for a bone spur in February 2008. Plaintiff otherwise had full range of motion in her hips and could do a partial squat. His impressions were, *inter alia*, knee pain, foot and ankle pain, hind/mid-foot abnormality (deformity), post tibialis failure, fibromyalgia, curvature of the cervical spine, and mild cervical spondylosis. As treatment, Dr. Hensarling prescribed Mobic and an evaluation by a physical therapist; he also advised Plaintiff not to stand all day and to lose weight; he specifically recommended that she take sick leave for six weeks "while [a physical therapist] works on [her] feet."[3] Plaintiff does not disclose and the record does not reflect whether she ever sought the recommended physical therapy.

As an initial matter, Crossley has not made the threshold showing that Dr. Hensarling was her treating physician. As a one-time examining physician, he did not have the "ongoing treatment relationship" with Plaintiff contemplated by the regulations. *Hernandez v. Astrue*, 278 F. App'x. 333, 338 n.4 (5th Cir. 2008) (treating physician is a physician who has provided medical treatment or an evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant); 20 C.F.R. § 404.1502. That said, the sole responsibility for determining a claimant's residual functional capacity rests with the ALJ, who must consider both exertional and non-exertional factors. 20 C.F.R. § 404.1546(c). Social Security Ruling 96-8p requires an ALJ when assessing residual functional capacity to perform a function-by-function analysis of the individual's ability

---

[3]ECF No. 7-1, pp. 171-73.

to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. 1996 WL 374184, at *1, 3. While the record in this case reflects the ALJ did not conduct an exhaustive function-by-function analysis of SSR 96-8p, substantial evidence supports her finding that Plaintiff retains the exertional capacity for light work. *Porter v. Barnhart*, 200 F. App'x. 317 (5th Cir. 2006) (unpublished) (finding compliance with SSR 96-8p when the ALJ considers the record as a whole); *Conerly v. Barnhart*, No. 1:05CV467- LG-JMR, 2008 WL 724030 (S.D. Miss. Mar. 17, 2008).

Plaintiff testified that she cannot stand or walk for longer than 20-30 minutes because her feet and back hurt all the time; she also testified that neck and shoulder pain prevent her from lifting and that she has lost strength in her right hand. But the record reflects, and Crossley does not dispute, that there are no documented complaints of foot pain or treatment after Dr. Hensarling's examination in July 2008. The ALJ expressly noted the absence of further treatment in her assessment of Crossley's residual functional capacity. While Plaintiff argues in her memorandum brief that the lack of treatment is directly attributable to the fact "that she stopped working in a job that required standing all day," such speculation lies beyond the scope of appellate review. Her testimony and earnings records indicate that she was engaged in work activity through August 7, 2008, and did not stop working until September 2008, nearly two months after Dr. Hensarling's examination. Although Plaintiff points out that Dr. Hensarling's examination was only four weeks prior to her alleged onset date, she has never challenged her alleged onset date

as August 7, 2008. Nor does she direct the Court to any objective medical evidence after her alleged onset date to support her claims that she is unable to stand or walk for longer than 20-30 minutes at a time. X-rays ordered by Dr. Hensarling showed no abnormalities in the right ankle and only early osteoarthritic changes in the right foot. The record also reflects that she received conservative treatment for her other physical impairments, and that the ALJ placed great weight on the fact that no treating or emergency room physician ever restricted her activities after her alleged onset date.

Plaintiff nevertheless maintains that the ALJ erred in failing to order a consultative examination to assess her functional limitations. The ALJ's duty to obtain a consultative examination or to re-contact a medical source is triggered when the evidence is insufficient to make an informed decision. 20 C.F.R. § 416.912; *see also Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). The duty is discretionary and must be balanced against the fact that the claimant bears the burden of proof through step four of the evaluation process. *Brock*, 84 F.3d at 728; *Jones*, 829 F.2d at 527; *see Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The evidence must be insufficient "to make an *informed* determination. No regulation, ruling, or court holding imposes a duty to re-contact a treating or other medical source simply because existing evidence is inadequate for a *favorable* determination." *Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 805 (E.D. Tex. 2006). The Fifth Circuit has stated "[t]o be very clear, 'full inquiry' does not require a consultative

examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." (emphasis in original). *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977). Fifth Circuit precedent "requires such further development of the record only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment." *Clary v. Barnhart*, 214 F. App'x. 479, 481 (5th Cir. 2007) (quoting *Brock*, 84 F.3d at 738)).

The record in this case reflects that Plaintiff underwent a consultative examination of her mental impairments in 2008, and that state agency psychologist, Dr. Amy Hudson, completed a residual functional capacity assessment. Given Plaintiff's limited effort during the examination, the examining physician was uncertain of her ability to perform routine, repetitive tasks in a consistent fashion; to interact with co-workers; to receive supervision, and to sustain attention. Dr. Hudson opined, however, that Plaintiff could understand, remember, and carry out simple instructions; maintain concentration and attention for 2-hour periods, interact with supervisors and co-workers at a very basic level; and, adapt adequately to complete a normal work week without excessive interruption from psychologically-based symptoms. These findings were adopted by the ALJ and are not disputed by Plaintiff on appeal.

Nothing of record indicates that Plaintiff or her counsel ever requested a consultative examination of her exertional impairments. *Jones*, 829 F.2d at 526; *Gannon*

*v. Astrue*, Civil Action No. 3:07CV1057-N, 2008 WL 4490738 (N.D. Tex. 2008). Even assuming arguendo that the ALJ erred in failing to order a consultative examination of Plaintiff's exertional impairments, this Court may not reverse for failure to develop the record unless Plaintiff can show that she was prejudiced as a result. To establish prejudice, Plaintiff must demonstrate that she "could and would have adduced evidence that might have altered the result." *Carey v. Apfel*, 230 F.3d. 131, 142 (5th Cir. 2000) (quoting *Kane,* 731 F.2d at 1220). Crossley has made no such showing here. She maintains that the ALJ's finding that she retains the residual functional capacity to perform light work is inconsistent with the finding that her foot pain and degenerative disc disease were severe impairments. The ALJ's severity findings at step two, however, "did not foreclose a finding that [she] had a residual functional capacity to perform a range of light work." *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001). While her severe impairments cause pain, there were no clinical or laboratory diagnostic studies supporting the constant and unremitting pain Plaintiff alleges precludes her from performing light work. *See Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

Substantial evidence therefore supports the ALJ's residual functional capacity finding that Plaintiff can perform the standing and walking requirements for light work. Dr. Hensarling recommended that she merely take sick leave and seek physical therapy after his Jury 2008 examination. There is also no medical evidence from a treating or examining physician after August 7, 2008, corroborating Plaintiff's claim that she cannot

9

perform the exertional requirements of light work.  Nor is there evidence that Plaintiff mentioned foot pain or standing restrictions to any treating or examining physician, or requested a consultative examination of her physical impairments.  Any error in failing to order a consultative examination was harmless.

    **2.    Whether substantial evidence supports the ALJ's credibility determination.**

Plaintiff also asserts as error the ALJ's finding that her testimony was not fully credible.  She contends that the ALJ ignored her persistent efforts to obtain relief and erroneously rejected her subjective complaints of pain solely because she collects unemployment benefits and must periodically sign statements that she is " ready, willing and able" to work.  These arguments are without merit.

Plaintiff testified at her administrative hearing that constant and unremitting foot and back pain preclude her from working and make it difficult to drive.  She reported that she is unable to do anything, and that her only daily activities include lying down, taking medication, and listening to music.  She is able to attend church a couple of times a month, but must rely on her daughter to help with housework and grocery shopping.  She acknowledges that medication eases her pain, but testified that it does not go away completely as it only reduces it from a ten to an eight.[4]  She also testified that she has

---

[4] In response to Plaintiff's claims that she made persistent efforts to obtain relief, the Commissioner argues the possibility that Plaintiff was seeking drugs.  This references an incident where Plaintiff was being examined by the nurse practitioner on January 7, 2010.  Plaintiff apparently requested a prescription for Tramadol, and while searching for her pharmacy number, a bottle of Tramadol fell out of her purse.  She had received 60 tablets on January 1,

10

been depressed since 1994, and takes naps during the day because night sweats make it difficult to sleep at night.[5]

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, her testimony regarding the intensity, persistence, and limiting effects were not fully credible. When not substantiated by objective medical evidence, the ALJ has the discretion to make a finding on the credibility of the statements concerning the intensity, persistence or limiting effects of symptoms, and the determination is entitled to considerable deference. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008); *see also Gonzales v. Astrue*, 231 F. App'x. 322 (5th Cir. 2007) (adverse credibility determination made by an ALJ was supported by inconsistencies between claimant's testimony and documentary evidence). Social Security regulations require the ALJ to consider Plaintiff's daily activities, symptoms, factors that precipitate and aggravate those symptoms, medication and side effects, types of treatment, and functional limitations. SSR 96-7p, 1996 WL 374186, * 3 (S.S.A) (July 2, 1996). But the ALJ is not required to follow "formalistic rules in his articulation." *Hernandez*, 278 F.App'x at 339 (quoting *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)).

---

2010. This is the only incident of its kind in the record. The ALJ does not reference the matter and no explanation is given by Plaintiff on appeal. ECF No. 7-9, p. 70.

[5]ECF No. 7-4, pp. 27-45.

Here, contrary to what Plaintiff argues, the ALJ's credibility assessment was not based solely on the fact that Plaintiff collects unemployment benefits. The ALJ gave other specific reasons, supported by the record, for her adverse credibility findings in compliance with SSR 96-7p. She noted that the objective medical evidence does not establish by "medically acceptable, clinical and laboratory diagnostic techniques the existence of impairments which could be reasonably expected to produce pain of the severity alleged by the claimant." Hip and shoulder x-rays revealed no abnormalities; cervical spine x-rays taken in December 2006 showed only degenerative changes of C5-C6 with narrowing of the C5 disc space; lumbar spine x-rays taken in October 2008 showed similar degenerative changes and narrowing of the disc space; and, an examination of her neck and right shoulder in January 2010 revealed full range of motion with only mild tenderness. She also noted that Plaintiff had not sought medical treatment "with the frequency which could be reasonably expected from an individual who is suffering from the symptoms of intense and disabling nature which the claimant alleges." Since her alleged onset date, Plaintiff sought medical treatment once in 2008, three times in 2009, and five times in the weeks preceding her administrative hearing in 2010. These records, which reflect conservative treatment, do not include any assessments from a treating or examining physician which mirror the daily activity restrictions Plaintiff described. Further, notwithstanding allegations of depression since 1994, the ALJ noted that Plaintiff had never sought treatment from a mental health agency. The only

documented complaint of depression during the relevant time period was in July 2009, and it was noted that Plaintiff was not taking any medication.[6]

Given the evidence, the ALJ reasonably concluded that Plaintiff's impairments were not so severe "as to prevent the claimant from being present and attentive in a normal job setting requiring no more than the range of light work described above."[7] Substantial evidence supports the ALJ's findings and they should not be disturbed here.

Based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to be disabling. The undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.

For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of*

---

[6]ECF Nos. 7-1, pp. 215-220, 223, 230- 236.

[7]ECF No. 7-4, p. 19.

*Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. The objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 22nd day of July 2013.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE